United States District Court
District of Massachusetts

| | |
|---|---|
| JAIME BOTERO, on behalf of himself and all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) Civil Action No. |
| | ) 12-10428-NMG |
| v. | ) |
| COMMONWEALTH LIMOUSINE SERVICE INC. and DAWSON RUTTER, JR., | )<br>) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

The subject case involves a putative class action brought by a former chauffeur, Jaime Botero ("Botero"), who claims that defendant Commonwealth Limousine Service ("Commonwealth") and its president, Dawson A. Rutter ("Rutter") (collectively, "defendants") violated the Massachusetts Wage Act and the Fair Labor Standards Act ("the FLSA") by failing to compensate its chauffeurs properly. Pending before the Court is plaintiff's motion for conditional certification of a class of similarly situated chauffeurs under the FLSA. For the reasons that follow, the Court will deny plaintiff's motion.

## I. Factual Background and Procedural History

### A. Factual Background

Commonwealth is a Massachusetts corporation that provides chauffeured transportation services to high-end clients. It employs approximately 70 chauffeurs. Plaintiff Botero was employed by Commonwealth as a chauffeur from February, 2007, until he resigned in October, 2011.

Chauffeurs at Commonwealth are paid an hourly wage. Company policy provides that chauffeurs will be paid for a variety of activities, including 15 minutes of "report time" prior to the start of a job, "portal time" spent traveling to and from the garage and time spent waiting for a customer. Certain trips, called "Road Shows," are day-long jobs during which the assigned chauffeur is told by Commonwealth to

> [n]ever, ever leave the location where you have dropped off your customer. You never know when they may call to come down and get a briefcase or their meeting finished early and they need you right away.

Because Commonwealth requires its Road Show drivers to be "better" chauffeurs and to undergo additional training, only about one half of its chauffeurs undertake Road Shows.

Chauffeurs are also paid for so-called "fill-in" time which is an hour or less in between two jobs each greater than one hour and, when authorized by the dispatcher, for "top time," non-working time of greater than one hour in between jobs. Top

time typically occurs when the chauffeur is asked to stay close to the garage for a likely call.

In April, 2009, Commonwealth instituted a new meal break policy which provided for an automatic deduction of 30 minutes as an unpaid meal break for every six hours of work. The policy was in effect until November 28, 2011, when Commonwealth made the 30-minute break compensable.

In essence, the policy placed the onus of taking the 30-minute unpaid meal break on the chauffeur, stating that because of the nature of the work, "it is up to the Chauffeur to take his/her breaks when the opportunity presents itself." If a chauffeur notified Commonwealth that he was unable to take such a break, the 30-minute period would not be deducted from the chauffeur's pay. A chauffeur could so notify Commonwealth in the "trip ticket," a log of the chauffeur's shift submitted to Commonwealth after each shift.

**B.　Procedural History**

In January, 2012, plaintiff filed suit against Commonwealth in Massachusetts state court alleging violations of state wage regulations. He then filed a three-count amended complaint, adding an FLSA claim. Defendants then removed the case to this Court.

Plaintiff promptly moved to certify a class conditionally under § 216(b) of the FLSA. Because defendants challenged the

viability of plaintiff's legal theory in light of two recent decisions in the Eastern District of New York, the Court determined that the parties should conduct limited discovery with respect to the merits of plaintiff's claim and defer the issue of conditional class certification.

Accordingly, in May, 2012, the Court ordered limited discovery with respect to whether (1) the putative class members qualified for the motor carrier overtime exemption in 29 U.S.C. § 213(b), (2) additional payments made by customers constituted tips or commissions under the FLSA and (3) defendants knew or should have known that Commonwealth's employees worked during their ostensible meal breaks. In September, 2012, at the conclusion of that discovery, defendants moved for summary judgment and, contemporaneously, three other Commonwealth chauffeurs attempted to "opt-in" to plaintiff's suit.

The Court referred defendants' motion to Magistrate Judge Judith Dein. In April, 2013, Magistrate Judge Dein issued a Report and Recommendation ("R&R") in which she recommended allowing defendants' motion with respect to plaintiff's claim for commissions but denying the motion with respect to the remaining claims. In July, 2013, the Court accepted and adopted the R&R in its entirety. Thereafter, plaintiff filed a renewed motion for conditional class certification.

## II. Analysis

Plaintiff's primary argument is that he and other employees of Commonwealth were paid for only the portions of their workday during which they spent time with defendants' clients, rather than for the full amount of time worked. Specifically, plaintiff contends that (1) the unpaid "meal break" taken by Commonwealth employees qualified as "work time" under the FLSA because chauffeurs were on call and predominantly acting for Commonwealth's benefit and (2) Commonwealth employees were not paid for "top time" waiting with their vehicles despite the requirement to remain on call. Although there are some differences among the putative class members, plaintiff contends that the putative class members were the victims of "a single decision, policy or plan." See Trezvant v. Fidelity Emp'r Servs. Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006).

Defendants counter that this case will require an individualized analysis of each of the alleged violations and is thus inappropriate for collective treatment. Specifically, they emphasize that the assignments given to Commonwealth employees are diverse and the frequency at which members of the putative class were paid for meal breaks and top time vary widely, thus belying the contention that a common factual analysis would apply to each member of the putative class. Defendants also note that, even if the Court conditionally certifies a class of

similarly situated Commonwealth employees, it should be limited to those who served as Road Show drivers, who spent time waiting on clients and those who worked at Commonwealth between January 27, 2009, when plaintiff Botero began, and November 28, 2011, when the meal deduction policy in question was rescinded.

Because the Court finds defendants' arguments with respect to the suggested limitations to the potential class to be cogent, it will consider only whether to certify conditionally a class of Commonwealth employees who performed Road Shows between January 27, 2009, and November 28, 2011.

**A. Legal Standard**

**1. "Similarly Situated" Under the FLSA**

The FLSA authorizes an employee to bring suit against an employer on his own behalf and on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). Such actions are permitted "to serve the interest of judicial economy and to aid in the vindication of plaintiffs' rights." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989).

To determine whether putative class members are similarly situated in the FLSA context, courts generally follow a two-tiered approach. O'Donnell v. Robert Half Intern., Inc., 429 F. Supp. 2d 246, 249 (D. Mass. 2006) (citing Kane v. Gage Merch. Servs., Inc., 138 F. Supp. 2d 212, 214 (D. Mass. 2001)). First, at the "notice stage", courts rely upon the pleadings and any

-6-

affidavits to determine, under a "fairly lenient standard," whether the putative class members "were subject to a single decision, policy, or plan that violated the law". See id. Second, upon the close of discovery and a motion of an employer, courts consider whether de-certification is warranted under a "higher" standard. See id. When the progress of litigation falls between the filing of the pleadings and the close of discovery, courts have used an "intermediate" approach. See Thiessen v. Gen. Elec. Capital. Corp., 996 F. Supp. 1071, 1080-81 (D. Kan. 1998).

Here, where the determination is conditional, not final, and defendants retain an opportunity to move to decertify any class certified conditionally, the Court holds that plaintiff must offer more than simply "some evidence" that the legal and factual claims of the putative class are similarly situated. Cf. Trezvant, 434 F. Supp. 2d at 44 (citing Kane, 138 F. Supp. 2d at 215). This litigation is, admittedly, not in its early stages but the Court concludes that the "intermediate" standard alluded to by some courts is simply a recognition that the standard is initially "lenient" when based solely on the pleadings but increases as more evidence is presented to the Court. See Litz v. Saint Consulting Grp., Inc., No. 11-10693-GAO, 2012 WL 549057, at *2 (D. Mass. Feb. 17, 2012) ("Because the available evidence is minimal, this standard is fairly lenient."); see

also Jackson v. New York Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995) ("The inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted.").

### 2. "Bona Fide Meal Breaks" Under the FLSA

Under the FLSA, employers need not compensate employees for meal breaks but such breaks must meet certain criteria to be a "bona fide meal break" rather than "work time." Harris v. City of Boston, 253 F. Supp. 2d 136, 142-43 (D. Mass. 2003) (citing 29 C.F.R. § 785.19(a)). Although the First Circuit Court of Appeals has not yet addressed the applicable standard, the courts of this district have determined that meal periods are considered "work" where "an employee predominantly spends the time performing activities for the employer's benefit." Harris, 253 F. Supp. 2d at 144; see also Botero v. Commonwealth Limousine Serv. Inc. ("Botero I"), No. 12-10428-NMG, 2013 WL 3929785, at *7 (D. Mass. July 23, 2013).

Ascertaining whether an employee's time is spent predominantly for his own or his employer's benefit focuses on factors including

> the limitations and restrictions placed upon employees, the extent to which those restrictions benefit the employer, the duties for which the employee is held responsible during the meal period, and the frequency in which meal periods are interrupted.

Bernard v. IBP, Inc. of Nebraska, 154 F.3d 259, 266 (5th Cir. 1998); see also Boehm v. Kansas City Power & Light Co., 868 F.2d 1182, 1185 (10th Cir. 1989) (assessing "the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time, and all surrounding circumstances").

Applying that test, courts have generally held that the mere fact that an employee is "on-call" during lunch and must remain in a certain area or in radio contact does not convert a meal break into work time. See, e.g., Barefield v. Village of Winnetka, 81 F.3d 704, 710 (7th Cir. 1996). Where, however, employees were required to provide certain services, even passively, their meal breaks were considered work time. See Reich v. Southern New England Telecomms. Corp., 121 F.3d 58, 65 (2d Cir. 1997).

Even if a restriction is superficially limiting, the fact that it is rarely invoked weighs against finding that a meal break constitutes work time. See Harris, 253 F. Supp. 2d at 145 ("An officer may have to terminate his lunch period altogether if an emergency arises, but this happens very rarely."). Moreover, in light of the occasional interruption, courts must determine "the degree to which the burden on the employee interferes with his or her personal pursuits." Pabst v. Oklahoma Gas & Elec. Co., 228 F.3d 1128, 1132 (10th Cir. 2000).

Therefore, in the final analysis, the inquiry into whether a given meal break qualifies as work time is "highly individualized and fact-based." Id.

**B.  Application**

The Court finds that, with respect to plaintiff's allegation that he was not properly compensated for top time, the members of the putative class are not similarly situated. While Commonwealth may have failed to pay each and every one of its chauffeurs at some point during their employment for time spent waiting with their vehicles, the circumstances surrounding each instance are different and not the result of a "single decision, policy, or plan that violated the law." See Trezvant, 434 F. Supp. 2d at 43.  Indeed, plaintiff himself admits that he and the other members of the putative class cannot be the victims of a single policy because he and other chauffeurs "occasionally received payment for time spent waiting in between customer jobs." See Botero I, 2012 WL 549057, at *3 ("Apparently there were times when the chauffeur was asked to stay close to the garage to take a likely call, and other times when the chauffeur was free to leave the garage and attend to his or her own business.").

Resolution of the second issue, i.e. whether the members of the prospective class are similarly situated by virtue of

defendants' policies, hinges on the gap between Commonwealth's stated policy and the actual experience of its employees.

Commonwealth admonished its Road Show chauffeurs "never, ever" to go far from their client's location during the day and to be ready to meet their client "right away." If that policy reflected the actual experience of Commonwealth's chauffeurs, the putative class members would likely be similarly situated with respect to whether their shifts included "bona fide meal breaks" that were not "predominantly for the benefit of the employer."

Nonetheless, the record before the Court indicates that Commonwealth's seemingly strict policy was not always enforced. The sworn statements of plaintiff Botero and other opt-in plaintiffs reveal that the policy did not uniformly prevent Commonwealth chauffeurs from using down time for their personal benefit. Indeed, plaintiff emphasizes that he does not claim that he could not eat lunch during the day, only that the mere fact that he was "on call" prevented his break from being a "bona fide meal break." That, of course, is not the law. See Harris, 253 F. Supp. 2d at 145 (citing Barefield, 81 F.3d at 710).

Indeed, plaintiff's argument seems to assume that the formerly applicable standard, whether an employee was "completely relieved from duty," still applies. It does not.

Instead, the Court asks simply whether the time was spent predominantly for the benefit of the employer. See id. at 144 (noting that "the majority of the Circuits that have had occasion to address the issue have rejected the 'completely relieved from duty' test in favor of the 'predominantly for the benefit of the employer' test"). The application of that test, moreover, depends on a "fact-intensive" inquiry. See Pabst, 228 F.3d at 1132.

At this juncture, the Court applies the intermediate standard to conditional class certification, requiring more than simply "some evidence" in the record that the putative class members are similarly situated. Applying that standard, the Court finds from the evidence at hand that the would-be class members have sufficiently particularized experiences as to foreclose a finding that they are similarly situated under § 216(b) of the FLSA.

There is a difference between viewing the facts most favorable to plaintiff Botero and finding that Commonwealth's chauffeurs "were required to be doing the employer's business at all times for which they were paid," on the one hand, and failing to find sufficient evidence that all of Commonwealth's Road Show chauffeurs are similarly situated, on the other hand. In other words, as this Court noted previously in this case,

> the fact that plaintiff has raised a genuine issue of material fact with respect to some of his claims has no bearing on whether those claims will qualify for class treatment.

Botero I, 2013 WL 3929785, at *1.  Indeed, it is plausible that each would-be class member, were he or she to file a separate complaint, could provide sufficient proof to survive summary judgment, yet that fact alone would not be sufficient to render such class members "similarly situated" so as to warrant conditional class certification here.

Although it employed the "commonality" requirement of Fed. R. Civ. P. 23(a)(2), rather than the FLSA's standard of "similarly situated," this Court's recent decision in Raposo v. Garelick Farms, LLC, 293 F.R.D. 52 (D. Mass. 2013), is illustrative.  In that case, the plaintiffs challenged "Garelick's automatic deduction of 30 minutes from every shift without regard to whether a break was actually taken." Moreover, they alleged that even if a driver were to take a 30-minute break, "the restrictions Garelick imposes on where and how such a break must be taken render that time compensable." The Court, however, held that determining whether the restrictions in fact "foreclosed a driver's use of his break to the point that it was 'working time'" was an inquiry that "does not generate common answers and cannot be answered 'yes' or 'no' on a classwide basis." Id. at 57.

Although the plaintiff in Raposo maintained that he was challenging the entire policy, the Court found that the determination of what constituted "working time" was an inquiry that went beyond the mere existence of a single policy and needed to be analyzed on a case-by-case basis.  Indeed, the Raposo Court found that adherence to the defendant's policies varied.  So too here.

Therefore, this Court concludes that the members of the prospective class of Commonwealth Road Show chauffeurs employed between January 27, 2009, and November 28, 2011, are not "similarly situated" under § 216(b) of the FLSA.  Accordingly, the Court need not address the parties' arguments with respect to the interest of prospective class members nor the precise form of any manner of notice.

### ORDER

For the foregoing reasons, plaintiff's renewed motion to certify a class conditionally (Docket No. 80) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated March 25, 2014